UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHA'RON MCINTOSH-DURHAM,

    Plaintiff,

v.                                                          Case No:   6:15-cv-203-Orl-37TBS

HARRIS CORPORATION and AETNA
LIFE INSURANCE COMPANY,

    Defendants.

## REPORT AND RECOMMENDATION

Plaintiff Sha'ron McIntosh-Durham filed this action against Defendants Harris Corporation and Aetna Life Insurance Company for alleged violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*  The parties stipulated to the dismissal of Aetna Life Insurance Company on August 20, 2015 (Doc. 24).  The remaining claims were reported settled after the parties engaged in mediation on August 27, 2015 (Docs. 20, 25).  The parties were granted two extensions of time, until December 31, 2015, to complete the settlement (Docs. 28, 30), but were unable to come to a resolution.  On December 30, 2015, Plaintiff's counsel, attorney Herbert Michael Hill, filed a Motion for Leave to Withdraw, for Directions Concerning Monies Held in Trust and for Imposition of Lien for Attorney's Fees (Doc. 31), and on December 31, 2015, Defendant Harris Corporation filed a Motion to Enforce Settlement Agreement and for Sanctions (Doc. 32).  Resolution of these motions has been delayed due to Plaintiff's medical condition (Docs. 33-44).  A hearing was held on June 14, 2016, at which Mr. Hill and Defendant's counsel, attorney Stephanie A. Segalini appeared in person and Plaintiff appeared by phone (Doc. 48).  The motions are now ripe for resolution.

## I. Background

Plaintiff and Defendant Harris Corporation, both represented by counsel, mediated this dispute on August 27, 2015 (Doc. 25; Doc. 32-1, ¶ 3). The mediation lasted approximately four and one half hours and culminated in a two page Settlement Agreement ("Agreement") which the parties and their attorneys signed (Doc. 32-1, ¶¶ 4-5). The Agreement provides for, *inter alia*, Defendant to pay a sum of money to Plaintiff; Plaintiff to keep the terms of the settlement confidential; and for Plaintiff to "execute a Release, the form and substance of which is to be agreed upon by counsel for each party in favor of the Plans, Plan Administrator, and Aetna Life Insurance Company." Ms. Segalini reports that Plaintiff appeared pleased after the mediation; expressed the desire to "move on" with her life; and did not indicate that she was confused about the settlement or that she did not want to settle (Doc. 32-1, ¶ 7).

Ms. Segalini sent Mr. Hill a draft general release (the "Draft Release") by email on September 15, 2015 (Id., ¶ 8). On September 16, 2016, Mr. Hill sent Plaintiff the Draft Release and a closing statement detailing how the proceeds of the settlement would be distributed. In his letter Mr. Hill said the Draft Release was "fairly standard in form and execution of same is required." Mr. Hill received the settlement funds from Harris Corporation and deposited them into his trust account. Plaintiff signed the closing statement on September 24, 2015, but she refused to sign the Draft Release.

On October 19, 2015, Mr. Hill informed Ms. Segalini that although he had no issues with the Draft Release, Plaintiff requested significant revisions including the removal of certain language (Id., ¶¶ 12-13). The parties conferred with the mediator, and Mr. Hill provided proposed revisions on October 29, 2015 (Id., ¶14). Defendant agreed

to the proposed revisions on November 23, 2015, but Plaintiff refused to sign the revised release (Id., ¶¶ 16-17).   Again, the parties conferred with the mediator (Id., ¶ 17).

At Plaintiff's request, Mr. Hill sent Defendant additional proposed revisions to the release on November 30, 2015.   The changes included a change to the description of Harris Corporation from Plan Sponsor to Plan Administrator (Id., ¶ 18).   "Later that day, counsel for the parties exchanged communication regarding how the governing Plan documents describe and define Harris' role related to the Plans.   Additionally, [Ms. Segalini] provided Plaintiff's counsel with the sections of the Plan establishing the Harris Employee Benefits Committee ('EBC'), not Harris Corporation, as the Plan Administrator." (Id.).   On December 14, 2015, Plaintiff asked Mr. Hill to return the settlement funds and said she would not sign a general release (Id., ¶ 20).

On December 22, 2015, Plaintiff, Mr. Hill, and Ms. Segalini participated in their fourth conference with the mediator concerning the content of the release (Id., ¶¶ 21-22). Plaintiff objected to the inclusion of Harris, as Plan Sponsor, in the definition of "Releasees" and indicated that removing this part of the definition would make the document acceptable to her (Id., ¶ 22).   Defendant agreed to the revision the following day, but Plaintiff once again refused to sign the revised release (Id., ¶¶ 23-25). Defendant filed its motion to enforce the settlement agreement on December 31, 2015, the deadline for the parties to complete the settlement (Doc. 32).

At the hearing, Plaintiff said she did not feel comfortable during the mediation and was "stressed out" but agreed to the settlement because she trusted her attorney.   She also said she believed the parties would continue to negotiate an issue about a committee meeting after she signed the Agreement, but that issue (which Plaintiff had difficulty explaining and Mr. Hill described as a procedural error in the denial of benefits

that was a basis for Plaintiff's claim) is unrelated to Plaintiff's refusal to sign the general release. Plaintiff said she agreed to the Agreement, but she did not agree to the "extensive" 15 page Draft Release. Now, she is no longer satisfied with the amount of the settlement, she believes her attorney did not work in her best interest, and she has lost confidence in him. Plaintiff says she wants what is fair and for someone to explain everything to her. She also wants discovery, to reopen mediation, and to get what she believes she is entitled to.

## II. Legal Standard

A district court has "inherent power to summarily enforce settlement agreements entered into by parties litigant in a pending case."  Cia Anon Venezolana De Navegacion v. Harris, 374 F.2d 33, 36 (5th Cir. 1967). See also Kent v. Baker, 815 F.2d 1395, 1400 (11th Cir. 1987) ("[A] district court has jurisdiction to enforce a settlement agreement, at least when one party refuses to abide by the agreement prior to dismissal of the action."). "Federal courts have held under a great variety of circumstances that a settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced." Id. at 35. "Compromises of disputed claims are favored by the courts. Where the parties, acting in good faith, settle a controversy, the courts will enforce the compromise without regard to what the result might, or would have been, had the parties chosen to litigate rather than settle." Id. (internal quotations and citations omitted).

Courts "use the applicable state's contract law to construe and enforce settlement agreements." Vinnett v. Gen. Elec. Co., 271 F. App'x 908, 912 (11th Cir. 2008). This is true even where, as here, the underlying cause of action is a federal claim. See id. Florida contract law governs the determination in this case. See Mergens v. Dreyfoos, 166 F.3d 1114, 1117 (11th Cir. 1999) ("Under Florida law, 'the validity and effect of a

settlement and release are governed by contract law.'") (quoting Travelers Ins. Co. v. Horton, 366 So. 2d 1204, 1205 (Fla. 3d DCA 1979)); Schwartz v. Fla. Bd. of Regents, 807 F.2d 901, 905 (11th Cir. 1987) ("A settlement agreement is a contract and, as such, its construction and enforcement are governed by principles of Florida's general contract law.").

Florida uses an objective test to determine whether a settlement agreement is enforceable. Robbie v. Miami, 469 So. 2d 1384, 1385 (Fla. 1985). "For a valid settlement agreement to exist there must be an offer, acceptance of that offer, consideration, and a mutual meeting of the minds on all essential terms." Jarvis v. BMW of N. Am., LLC, No. 2:14-cv-654-FtM-29CM, 2016 U.S. Dist. LEXIS 37679, at *4 (M.D. Fla. Mar. 22, 2016) (citing In re Rolsafe Int'l, LLC, 477 B.R. 884, 902 (Bankr. M.D. Fla. 2012)). See also Vital Pharms., Inc. v. S.A.N. Nutrition Corp., No. 06-60646-CIV-COHN/S, 2007 U.S. Dist. LEXIS 41013, at *19 (S.D. Fla. June 5, 2007) (citing Robbie, 469 So. 2d at 1385). The terms of the agreement must be "sufficiently specific and mutually agreed upon as to every essential element." Carpaneda v. Quayside Place Partners, LLP, No. 09-20740-CIV-Seitz/O'Sullivan, 2010 U.S. Dist. LEXIS 67862, at *5 (S.D. Fla. July 6, 2010) (Spiegel v. H. Allen Holmes, Inc., 834 So. 2d 295, 297 (Fla. 4th DCA 2002)). See also Don L. Tullis & Assocs. v. Benge, 473 So. 2d 1384, 1386 (Fla. 1st DCA 1985) ("To be enforced, the agreement must be sufficiently specific and mutually agreeable on every essential element."). "The party seeking enforcement of a settlement agreement has the burden of establishing assent by the opposing party." Vital Pharms., Inc., 2007 U.S. Dist. LEXIS 41013, at *18 (citing Williams v. Ingram, 605 So. 2d 890, 893 (Fla. 1st DCA 1992)). "If an intent to settle the essential terms can be established, 'it does not matter that the agreement is not fully executed.'" Jarvis, 2016 U.S. Dist. LEXIS

37679, at *4 (quoting In re Air Safety Int'l, L.C., 326 B.R. 883, 888 (Bankr. S.D. Fla. 2005)).  "In Florida, settlements may exist and be enforced without being signed by the parties."  Id. (citing In re Rolsafe Int'l, LLC, 477 B.R. at 903; Reed ex rel Reed v. United States, 717 F. Supp. 1511, 1517 (S.D. Fla. 1988) ("All that is required is that the terms be clear, definite and capable of proof ... [T]he physical act of signing a document is a mere formality where the parties clearly intend to bound.")).  "'A party is bound by, and a court is powerless to rewrite, the clear and unambiguous terms of a voluntary contract.'" Mergens, 166 F.3d at 1117 (quoting Medical Center Health Plan v. Brick, 572 So. 2d 548, 551 (Fla. 1st DCA 1990)).

### III. Discussion

Plaintiff does not argue that she entered into the Agreement as a result of duress or fraud.  Cf. Miami v. Kory, 394 So. 2d 494, 497 (Fla. 3d DCA 1981) ("'Duress is a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition.'") (quoting Herald v. Hardin, 116 So. 863, 864 (1928)); Fuddruckers, Inc. v. Fudpucker's, Inc., 436 F. Supp. 2d 1260, 1265 (N.D. Fla. 2006) ("In the absence of a showing of fraud or undue influence [a settlement] is decisive of the rights of the parties thereto and operates as a bar to the reopening of the original controversy.") (alteration in original).

Plaintiff has not contended that the terms of the Agreement are unclear, ambiguous, or that they do not cover all points necessary to settle the case.  Rather, she complains that she was "stressed out" and uncomfortable during the mediation, she does not believe her attorney worked in her best interest, she believed the parties would continue to negotiate an issue about a committee meeting after she signed the

Agreement, and she is no longer satisfied with the amount of the settlement. These matters have no bearing on whether Plaintiff voluntarily entered into the Agreement or whether the Agreement contains the essential terms to settle the case. As the court noted in Devoux v. Wise, No. 3:12-cv-540-J-34JBT, 2014 U.S. Dist. LEXIS 51884 (M.D. Fla. Feb. 12, 2014),

> Plaintiff, in the courts opinion, suffers from "buyer's remorse" regarding the terms she agreed to during the settlement conference. Plaintiff negotiated a settlement under circumstances which must have been stressful for her; now, she is attempting to attack the settlement agreement from every angle. The best of her arguments are tenuous, and the worst are plainly frivolous.

Id. at *22-23 (quoting McCormick v. Brezinski, No. 08-10075, 2010 U.S. Dist. LEXIS 36106, at *16-17 (E.D. Mich. Apr. 13, 2010)).

One of Plaintiff's obligations was to "execute a Release, the form and substance of which is to be agreed upon by counsel for each party in favor of the Plans, Plan Administrator, and Aetna Life Insurance Company." Plaintiff's attorney agreed to the Draft Release and instructed his client to sign it. At that point, Plaintiff's contractual obligation was to sign the Draft Release. When she refused, Harris Corporation could have declared Plaintiff in breach of the Agreement. Instead, the Draft Release was revised several times to address Plaintiff's concerns. At the hearing, Mr. Hill said he is satisfied with the form and substance of the revised release. Plaintiff therefore has an obligation to sign and deliver the revised release to Harris Corporation. To avoid further issues with Plaintiff, I suggest the Court decree that the most recent iteration of the revised release is deemed binding on Plaintiff as if she had unconditionally executed and delivered it to Harris Corporation.

Harris Corporation also seeks sanctions against Plaintiff based upon her refusal to perform the Agreement. However, there is no evidence that Plaintiff acted in bad faith. The case was delayed because of Plaintiff's apparent misunderstanding of the legal significance of the Agreement and her medical condition. In the absence of any vexatious motive, I recommend that the motion for sanctions be denied. See Devoux, 2014 U.S. Dist. LEXIS 51884, at *23; McCormick, 2010 U.S. Dist. LEXIS 36106, at *17; Austin v. Spirit Airlines, Inc., No. 08-60540-CIV-COHN, 2008 U.S. Dist. LEXIS 95947, at *6 (S.D. Fla. Nov. 17, 2008).

Mr. Hill has moved to withdraw as counsel, for directions concerning the settlement sum held in his trust account, and for imposition of a lien for attorney's fees (Doc. 31). Plaintiff does not oppose Mr. Hill's withdrawal. But, she argues that he should not be paid because she is unhappy with the settlement and wants to further litigate the case. However, Plaintiff is bound by the terms of the Agreement regardless of whether she is now unhappy with the deal she agreed to, and I see no reason why Mr. Hill is not entitled to a charging lien on the file.

### III. Recommendation

For these reasons, I **RESPECTFULLY RECOMMEND** that:

(1) Mr. Hill's motion for leave to withdraw be **GRANTED** (Doc. 31), and that:

    (a) He be terminated as counsel for Plaintiff;

    (b) He be granted a charging lien on the file, including the settlement funds in his trust account; and

    (c) Mr. Hill be directed to disburse the funds in his trust account in accordance with the closing statement Plaintiff signed.

    (d) Upon disbursement of the funds, the charging lien should be deemed satisfied.

  (2) Defendant's motion to enforce the settlement agreement (Doc. 32) be **GRANTED** to the extent that the Court finds:

    (a) The parties are bound by the terms of the Agreement; and

    (b) Plaintiff is decreed to have unconditionally executed and delivered the current version of the release to Harris Corporation.

  (3) Defendant's motion for sanctions be **DENIED**.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on June 21, 2016.

_____
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

  Presiding United States District Judge
  Counsel of Record
  Any Unrepresented Parties